# UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

JOHN RUSSELL GATES,                    :
     Petitioner          :     CIVIL ACTION NO. 3:14-CV-2392
                              :     (Judge Nealon)
        v.               :
                              :
MARK CAPOZZA, ET AL.,                   :
     Respondents       :

## MEMORANDUM

On November 21, 2014, Petitioner, John Russell Gates, an individual currently on parole, instituted the above-captioned action by filing a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 in the United States District Court for the Western District of Pennsylvania. (Doc. 1). That petition was then transferred to this Court on December 9, 2014. (Doc. 6). Petitioner argues that 1) his sentence violates the Double Jeopardy Clause of the United States and Pennsylvania Constitutions; 2) his sentence exceeded the maximum sentence for the offense; 3) the "minimum sentence of fifty-four (54) months, [is] thirty-eight (38) months, and two (2) consecutive years probation in excess of the upper range of the standard guideline sentence;" and 4) the sentencing court abused its discretion by imposing a excessive aggregate sentence for the offenses charged and based the sentence on "illegal and improper considerations." (Doc. 1, pp. 5, 7, 8, 10). Petitioner seeks an order vacating his sentences, "reverse and remand the

case" to the trial court, allow Petitioner to withdraw his guilty plea, and/or releasing Petitioner for time served.  (Doc. 1, p. 15).  For the reasons stated below, the petition will be denied.

## I.    BACKGROUND

On or about August 6, 2012, Pennsylvania State Police arrested Petitioner and charged him with eight (8) counts of theft by unlawful taking, eight (8) counts of theft by deception, nine (9) counts of theft by failure to make required disposition of funds received, eight (8) counts of misapplication of entrusted property, and two (2) counts of bad checks.  Pa. v. Gates, CP-31-CR-0415-2012.[1] These charges arose from allegations that between April 1, 2011, and December 31, 2011, Petitioner, a former attorney, had received $455,158.00 from nine (9) families and failed to distribute those funds as required.  Id.

On February 13, 2013, Petitioner entered guilty pleas to nine (9) counts of theft by failure to make required disposition of funds pursuant to 18 Pa. C.S.A. § 3927(a).  (Doc. 19-6, p. 2); Gates, CP-31-CR-0415-2012; Pa. v. Gates, 1255 MDA

---

[1] This Court takes judicial notice of the Huntingdon County Court of Common Pleas' docket sheet in Pa. v. Gates, CP-31-CR-0415-2010, which is available through Pennsylvania's Unified Judicial Docket System docket research at: http://ujsportal.pacourts.us/.

2013, at p. 1 (filed Aug. 20, 2014).[2]  The remaining twenty-six (26) charges were *nolle prossed*. <u>Gates</u>, 1255 MDA 2013, at p. 2.  On May 17, 2013, Petitioner was sentenced to an aggregate sentence of fifty-four (54) months to one hundred and forty-four (144) months imprisonment. <u>Gates</u>, 1255 MDA 2013, at pp. 1-2.  The sentencing court then found Petitioner eligible for the Recidivism Risk Reduction Incentive ("RRRI"), which reduced Petitioner's minimum sentence to forty-five (45) months. <u>Id.</u>  Petitioner also was ordered to pay $455,158.31 in restitution. (Doc. 19-6, p. 2); (Doc. 19-9, pp. 24-27); <u>Gates</u>, 1255 MDA 2013, at p. 1.

On August 20, 2014, the Pennsylvania Superior Court affirmed the sentencing court's judgement and granted Petitioner's counsel's petition to withdraw. <u>Gates</u>, 1255 MDA 2013, at pp. 1-2.  In reaching that determination, the Superior Court noted that Petitioner raised twelve (12) issues on appeal. <u>Id.</u> at p. 4.  According to the Superior Court, "[s]everal of those issues concern the adequacy of the trial judge's oral guilty plea colloquy." <u>Id.</u>  Petitioner claimed "the judge's colloquy did not comply with legal requirements showing that his conduct proved all the elements of the offenses for which he pled guilty and that

---

[2]  This Court takes judicial notice of the Pennsylvania Superior Court's docket sheet in <u>Pa. v. Gates</u>, 1255 MDA 2013, which is available through Pennsylvania's Unified Judicial Docket System docket research at: http://ujsportal.pacourts.us/.

the colloquy failed to set forth sufficient facts to support the criminal elements."

Gates, 1255 MDA 2013, at p. 4.  The Superior Court initially found that Petitioner

waived those claims," but determined that "even if [the Superior Court] did not

deem these issues waived, [the Superior Court] would conclude that they are

frivolous."  Id.  According to the Superior Court, "[a] review of [Petitioner's] oral

and written guilty plea colloquies demonstrates that the judge complied with the

applicable rules regarding the tender of pleas and plea agreements."  Id. (citing PA.

R. CRIM. P. 590).  Specifically, the Superior Court noted that the sentencing court

"discussed the nature of the charges brought against" Petitioner, and "the deputy

attorney general gave detailed accounts of each of [Petitioner's] conduct in

relation to the elements of the offenses for which he pled guilty and that there was

a sufficient factual basis for this plea."  Id. at p. 5.  "Accordingly," the Superior

Court concluded, "the oral plea colloquy sufficiently set forth [Petitioner's]

conduct in relation to the elements of the offenses for which he pled guilty and

that there was a sufficient factual basis for his plea."  Id.

The Superior Court also noted that "[t]hree of [Petitioner's] issues concern

the discretionary aspects of his sentence.[footnote omitted]"  Id.  "First,

[Petitioner] claim[ed] that the court erred in sentencing him on nine counts

consecutively, rather than running all nine counts concurrently to one another

4

because they are all part of 'a single scheme.'" <u>Gates</u>, 1255 MDA 2013, at p. 6.

The Superior Court stated that "[t]he imposition of consecutive rather than

concurrent sentences lies within the sound discretion of the sentencing court." <u>Id.</u>

The Superior Court noted that "[h]ere, nine individual victims and their families

were affected by [Petitioner's] actions, with the total theft exceeding $450,000."

<u>Id.</u> at p. 8.  Further, "[t]he client funds that [Petitioner] misappropriated for

personal use included: (1) proceeds from decedents' estates he represented; (2)

money that should have been distributed to a nursing home for the care of a

client's father; and (3) money held in escrow for clients." <u>Id.</u>  The Superior Court

also noted that Petitioner "signed a written plea colloquy acknowledging the

extent of his criminal actions, indicating that he understood the factual nature of

the offense to which he was pleading guilty and that he was aware of the

permissible range of sentences and/or fines that could be imposed." <u>Id.</u>

"Moreover," the Superior Court found, Petitioner "stated that he understood that

the trial court could impose consecutive sentences." <u>Id.</u>  "Under such

circumstances," the Superior Court concluded that:

> we do not find [Petitioner's] aggregate sentence of 54 to 144
> months' imprisonment (consisting of nine counts running
> consecutively) is excessive, especially where the
> Commonwealth agreed to *nolle prosse* 26 criminal charges and
> the sentence for each individual count was within the standard

range of the guidelines.

Gates, 1255 MDA 2013, at p. 8 (citing Pa. v. Fiascki, 886 A.2d 261 (Pa. Super. Ct.

2005) (where trial court considered unique circumstances of crimes and effect that

crimes had on each of 23 individual theft victims, trial court's sentence of 10-20

years incarceration for defendant's guilty plea to 23 counts of theft by failure to

make required disposition of funds was not unreasonable)).

The Superior Court also denied Petitioner's claim that "pursuant to 18

Pa.C.S. § 3902 his theft offenses should have constituted a single offense for

sentencing purposes."  Id.  The Superior Court found that while Petitioner "pled

guilty to only one theft offense," located at 18 Pa.C.S. § 3927(a), "[t]he fact that

[Petitioner] was sentenced on nine separate counts for a single theft offense is

legally permissible and does not violate section 3902."  Gates, 1255 MDA 2013, at

p. 9 (comparing Fiascki, 886 A.2d 261 with Pa. v. Haines, 442 A.2d 757 (Pa.

Super. Ct. 1982)).

Additionally, the Superior Court rejected Petitioner's claims that:

> his sentence is illegal for the following reasons: (1) the
> prosecution committed "sentencing manipulation" by
> separating one crime into nine counts and (2) several of the
> counts should have merged, for sentencing purposes, into the
> one offense as "lesser included offenses.[footnote omitted]"

Id. at pp. 9-10.  As to sentencing manipulation, the Superior Court concluded that

6

Petitioner was not entrapped into committing additional acts "beyond the monies he misappropriated from his first client-victim." Gates, 1255 MDA 2013, at p. 10. "In short, the prosecution or government had no involvement in encouraging his criminal conduct or prolonging his illegal actions beyond the first criminal act in April 2011." Id. "Therefore," the Superior Court determined, "this claim has no merit." Id.

In regards to Petitioner's claim that the "nine counts should have merged for sentencing purposes," the Superior Court found that Petitioner "failed to properly dispose of the funds of nine clients, nine separate times." Id. at p. 11. "As a result, his conduct was not part of a single criminal episode; rather, he violated section 3927 each time he committed theft against each of his nine victims." Id. "Therefore," the Superior Court concluded, "merger, as defined in section 9765, is inapplicable." Id.

## II.    **DISCUSSION**

### A.    **Jurisdiction**

Section 2254 confers jurisdiction on the United States district courts to issue a "writ of habeas corpus in behalf of a person in custody pursuant to a judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a).

**B.**   **Exhaustion**

As states above, Petitioner argues that 1) his sentence violates the Double Jeopardy Clause of the United States and Pennsylvania Constitutions; 2) his sentence exceeded the maximum sentence for the offense; 3) the "minimum sentence of fifty-four (54) months, [is] thirty-eight (38) months, and two (2) consecutive years probation in excess of the upper range of the standard guideline sentence;" and 4) the sentencing court abused its discretion by imposing a excessive aggregate sentence for the offenses charged and based the sentence on "illegal and improper considerations."  (Doc. 1, pp. 5, 7, 8, 10).  Of these four (4) claims, Respondent only raises a question as to whether Petitioner's double jeopardy claim was properly exhausted.  See (Doc. 21, pp. 23-24).

In particular, Respondent asserts that Petitioner, "in his questions presented to the Superior Court on direct appeal," listed the following:

> 6. Under case law, if the record supports that the Defendant/Appellant violated 18 Pa.C.S. [§] 3927, did defendant commit one crime for sentencing purposes? 7. However the court answers question six (6) above, did Judge Searer misinterpret the use of the guidelines by sentencing nine (9) times under the guidelines? 8. Was Defendant/Appellant['s] sentence illegal on the basis on one of the following: . . . b. Merger of the nine (9) counts into a single (1) offense for purposes of sentencing should have been done on the basis of "lesser included offenses."

(Doc. 21, p. 23).  According to Respondent, the Commonwealth, in responding to

Petitioner's merger claims on appeal, "noted that Pennsylvania courts have long

recognized one non-statutory example of an illegal sentence; namely, a claim that

sentences should merge."  (Id.).  Respondent asserts that this "example is based on

longstanding Supreme Court precedent regarding double jeopardy."  (Id.) (citing

Pa. v. Berry, 877 A.2d 479, 483 (Pa. Super. 2005)).  Respondent states that

Petitioner, in his reply brief, specifically referenced double jeopardy.  (Id.).  In

particular, Petitioner stated in his reply brief filed as part of his direct appeal

before the Pennsylvania Superior Court that:

> At least 8 of the sentences imposed by Judge Searer were
> illegally imposed.  The Commonwealth's arguments on pages
> 29-33 of Appellee's brief are best replied to by citing and
> quoting from two cases gleaned from reading the cases cited by
> Appellee.  One Pennsylvania case and one federal appellate
> case focus on the main issue in the case at hand and hurl a dart
> into the bulls eye of the one crime arguments, DOUBLE
> JEOPARDY.

(Id.) (emphasis in original).  Respondent argues that Petitioner "did not explicitly

reference the federal constitution nor did he specifically raise[] 'double jeopardy'

as a claim in his statement of questions presented to the Pennsylvania Superior

Court," and thus, "it is arguably a very close question as to whether he has

properly exhausted this claim."  (Id. at p. 24).  In addition to acknowledging the

liberal pleading standard applied to <u>pro</u> <u>se</u> filings, Respondent also argues that

"this Court may deny unexhausted claims on the merits if they are facially

mertiless and warrant denial of habeas relief under 28 U.S.C. § 2254(b)(2)."  (Doc.

21, p. 24) (citing <u>Mahoney v. Bostel</u>, 366 F. App'x 368, 371 (3d Cir. 2010)).

Thus, the arguably "very close question" notwithstanding, Respondent states that

the Court, "[u]nder these circumstances . . . should review [Petitioner's] double

jeopardy claim and deny it on the merits."  (<u>Id.</u>).

Petitioner responds by arguing that he "explicitly raised" double jeopardy

before the Pennsylvania Superior Court.  (Doc. 22, p. 2).  According to Petitioner,

the issue raised was regarding:

> [w]hen a government convicts a defendant for (2) two crimes
> based on identical conduct, (failure to make required payments
> based on issuing NGF checks to Coy Hicks, taking no further
> action or prior action constituting failure to make required
> payments set forth in the record) the fifth amendment requires
> the sentencing Court to "determine whether the legislature . . .
> intended that each violation be a separate offense."

(<u>Id.</u> at p. 3) (quoting <u>Garrett v. United States</u>, 471 U.S. 773, 778 (1985)).  Initially,

Petitioner argues that "[n]either the trial or Superior court decided that issue on the

merits."  (<u>Id.</u>).  Furthermore, Petitioner argues that he "set forth that the

Pennsylvania Supreme Court set forth the law of Pennsylvania interpreting this

situation in [<u>Freundt v. DOT, Bureau of Driver Licensing</u>, 883 A.2d 503, 584 (Pa.

10

2005)]." (Doc. 22, p. 3). However, according to Petitioner, "[b]oth the sentencing Court and the Superior court misapplied the law, based on facts assumed not supported by the record." (Id.). "Therefore," Petitioner concludes, "both Courts unreasonably applied the law as announced by the U.S. Supreme Court and the Supreme Court of Pennsylvania and based the decision unreasonably on facts not supported by the record." (Id.).

"[E]xhaustion is not jurisdictional and is waivable." Mickens-Thomas v. Vaughn, 321 F.3d 374, 376 n.2 (3d Cir. 2003) (citing Narvaiz v. Johnson, 134 F.3d 688, 693 n.1 (5th Cir. 1998)); see Wilson v. Sec'y, Pa. Dep't of Corr., 782 F.3d 110, 116 (3d Cir. 2015) ("The state can waive the exhaustion requirement by failing to raise it . . . .") (citing to Mickens-Thomas, 321 F.3d at 376 n.2). Pursuant to 28 U.S.C. § 2254(b)(3), "[a] State shall not be deemed to have waived the exhaustion requirement or be estopped from reliance upon the requirement unless the State, through counsel, expressly waives the requirement." 28 U.S.C. § 2254(b)(3).

Here, Respondent asserts "that this Court should review [Petitioner's] double jeopardy claim and deny it on the merits." (Doc. 21, p. 24). Although Respondent states that the Court should reach the merits of Petitioner's double jeopardy claim and thus, concedes the issue of exhaustion, the United States Court

11

of Appeals for the Third Circuit has stated that "something more than a concession in an answer is required" to successfully waive exhaustion under 28 U.S.C. § 2254(b)(3).  Dreher v. Pinchak, 61 F. App'x 800, 803 (3d Cir. 2003). Nevertheless, Petitioner argued before the Pennsylvania Superior Court that his nine (9) counts should have merged for sentencing purposes.  Gates, 1255 MDA 2013, at p. 10.  Recently, the Third Circuit stated that "Pennsylvania's merger doctrine . . . fully incorporates a defendant's rights under the Double Jeopardy Clause."  See Harmon v. Lamar, 2016 U.S. App. LEXIS 2275, at *10 (3d Cir. Feb. 10, 2016) (citing Commonwealth v. Anderson, 650 A.2d 20, 23 (Pa. 1994)). Therefore, it is determined that the Court will deem Petitioner's double jeopardy claim exhausted and reach the merits of that claim.  See Id. at *9 (finding that the petitioner's merger claim "was sufficient to put the state courts 'on notice that a federal claim [was] being asserted.'") (quoting McCandless v. Vaughn, 172 F.3d 255, 261 (3d Cir. 1999)); Briston v. Wholey, 307 F. App'x 616, 618 (3d Cir. 2009) ("A habeas petitioner 'need not have cited "book and verse" of the federal constitution' in order to 'fairly present' a federal claim at the state level for purposes of exhaustion.") (quoting McCandless, 172 F.3d at 261); see also McCandless, 172 F.3d at 261-62).

### C.    Standard of Review

"The AEDPA specifies that the standard of review applicable to a particular claim depends on how that claim was resolved by the state courts." Lockhart v. Patrick, 2014 U.S. Dist. LEXIS 118724, at *35 (M.D. Pa. 2014) (Caputo, J.) (Breakiron v. Horn, 642 F.3d 126, 131-32 (3d Cir. 2011)).  "If an exhausted claim has not been adjudicated by the state courts, then de novo review applies." Id. (citing Breakiron, 642 F.3d at 131 (citing Porter v. McCollum, 558 U.S. 30, 39 (2009))).  "If, however, the state court's highest court adjudicated a federal habeas claim on the merits, rather than on a procedural or some other ground, the federal court must review the claim under the deferential standard contained in 28 U.S.C. § 2254(d)." Id. (citing Appel v. Horn, 250 F.3d 203, 210 (3d Cir. 2001)).

As stated, "AEDPA scrutiny is applicable only if the state court adjudicated the petitioner's claims 'on the merits.'" Rock v. Pa., 2014 U.S. Dist. LEXIS 132809, at *14 (M.D. Pa. 2014) (Rambo, J.) (citing 28 U.S.C. § 2254(d); Appel v. Horn, 250 F.3d 203, 210 (3d Cir. 2001)); see Wright v. Superintendent Somerset SCI, 601 F. App'x 115, 119 (3d Cir. 2015) ("if the state court did not reach the merits of the federal claim, then it is reviewed de novo.") (citing Cone v. Bell, 556 U.S. 449, 472 (2009)).  "An 'adjudication on the merits' has a well settled meaning: a decision finally resolving the parties' claims, with res judicata effect,

that is based on the substance of the claim advanced, rather than on a procedural, or other, ground." Rompilla v. Horn, 355 F.3d 233, 247 (3d Cir. 2004) (quoting Sellan v. Kuhlman, 261 F.3d 303, 312 (2d Cir. 2001)), rev'd on other grounds sub nom by Rompilla v. Beard, 545 U.S. 374 (2005). "[A]n 'adjudication on the merits' can occur at any level of state court." Rock, 2014 U.S. Dist. LEXIS 132809, at *14 (citing Thomas v. Horn, 570 F.3d 105, 115 (3d Cir. 2009)). However, "to qualify as an 'adjudication on the merits,' the state court decision must finally resolve the claim.  This means that the state court's resolution of the claim must have preclusive effect." Thomas, 570 F.3d at 115 (citing Rompilla, 355 F.3d at 247 (quoting Sellan, 261 F.3d at 311)).  "Where a state court has not reached the merits of a claim thereafter presented to a federal habeas court, the deferential AEDPA standards do not apply, and the federal court must exercise de novo review over pure legal questions and mixed questions of law and fact." Rock, 2014 U.S. Dist. LEXIS 132809, at *15 (citing Simmons v. Beard, 581 F.3d 158, 165 (3d Cir. 2009) (citing Appel, 250 F.3d at 210)).  "However, the state court's factual determinations are still presumed to be correct, rebuttable upon a showing of clear and convincing evidence.[footnote omitted]" Id. (citing Simmons, 581 F.3d at 165 (citing Appel, 150 F.3d at 210)).

Here, in regards to Petitioner's double jeopardy claim, the Pennsylvania

Superior Court did not expressly address the Double Jeopardy Clause or cite to any federal authority.  See Gates, 1255 MDA 2013.  However, the Superior Court did address Petitioner's claim that the nine (9) counts should have merged for sentencing purposes because "his conduct should be considered a single crime" under Pennsylvania's merger doctrine located at 42 Pa.C.S. § 9765.  Id. at p. 10. The United States Court of Appeals for the Third Circuit has found that "Pennsylvania's merger doctrine . . . fully incorporates a defendant's rights under the Double Jeopardy Clause."  Harmon, 2016 U.S. App. LEXIS 2275, at *10 (citing Anderson, 650 A.2d at 23).  Therefore, Petitioner's double jeopardy claim "'may be regarded as having been adjudicated on the merits' by virtue of the Superior Court's rejection of his merger claim."  Id. (quoting Johnson v. Williams, 133 S. Ct. 1094, 1096 (2013)).

"Where, as here, a state court has decided the merits of a petitioner's federal claim, habeas relief under AEDPA is appropriate only if the state court's adjudication of the claim 'was (1) "contrary to, or involved an unreasonable application of, clearly established Federal law," or (2) "was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding."'"  Id. at *10-11 (citing Grant v. Lockett, 709 F.3d 224, 231 (3d Cir. 2013)).  The United States Court of Appeals for the Third Circuit has

stated that a state court's findings of fact will be "accord[ed] great deference" and "will not be deemed unreasonable 'merely because the federal habeas court would have reached a different conclusion in the first instance.'" Harmon, 2016 U.S. App. LEXIS 2275, at *11 (quoting Wood v. Allen, 558 U.S. 290, 301 (2010)).

"The Third Circuit has set forth a two-step process for reviewing § 2254 petitions." Lepre v. Commonwealth of Pa., 2008 U.S. Dist. LEXIS 48421, at *5 (M.D. Pa. 2008) (Conner, J.). "First, the court must 'identify the applicable Supreme Court precedent and determine whether it resolves [petitioner's] claims.'" Id. (alterations in original) (quoting Outten v. Kearney, 464 F.3d 401, 413 (3d Cir. 2006)). "'In performing this inquiry, it is not sufficient for [a petitioner] to show merely that his interpretation of Supreme Court precedent is more plausible than the state courts; rather, [the petitioner] must demonstrate that Supreme Court precedent requires the contrary outcome.'" Id. (alterations and emphasis in original) (quoting Outten, 464 F.3d at 413). "The reviewing court, upon a finding that 'the state court decision is not "contrary to" the applicable Supreme Court precedent,' will 'advance to the second step in the analysis' which determines if 'the state court decision was based on an "unreasonable application" of Supreme Court precedent'" Id. at *5-6 (quoting Outten, 464 F.3d at 413-14). "'[T]he state court's application of Supreme Court precedent must have been

objectively unreasonable,' that is, '[the reviewing court] should not grant the

petition unless the state court decision, evaluated under existing Supreme Court

precedent.'" Lepre, 2008 U.S. Dist. LEXIS 48421 at *6 (alterations in original)

(quoting Outten, 464 F.3d at 414).

**D.    Double Jeopardy Provision of the United States Constitution Was Not Violated When Petitioner was Sentenced On Nine (9) Charges Under 18 Pa. C.S. § 3927(a).**

**i.    Merits**

Initially, the United States Court of Appeals for the Third Circuit has

recognized that "a counseled and voluntary guilty plea may not be collaterally

attacked in a habeas corpus action." Lesko v. Lehman, 925 F.2d 1527, 1537 (3d

Cir. 1991) (citing Mabry v. Johnson, 467 U.S. 504, 508 (1984)).  The United

States Supreme Court has stated that:

> A plea of guilty and the ensuing conviction comprehend all of
> the factual and legal elements necessary to sustain a binding,
> final judgment of guilt and a lawful sentence.  Accordingly,
> when the judgment of conviction upon a guilty plea has
> become final and the offender seeks to reopen the proceeding,
> the inquiry is ordinarily confined to whether the underlying
> plea was both counseled and voluntary.  If the answer is in the
> affirmative then the conviction and the plea, as a general rule,
> foreclose collateral attack.

United States v. Broce, 488 U.S. 563 (1989).  Thus, "[i]t is well established that a

criminal defendant's unconditional, knowing and voluntary plea of guilty waives

17

all non-jurisdictional issues." <u>Washington v. Sobina</u>, 475 F.3d 162, 165 (3d Cir.

2007) (citing <u>Woodward v. United States</u>, 426 F.2d 959, 964 (3d Cir. 1970);

<u>Abram v. United States</u>, 398 F.2d 350 (3d Cir. 1968)).  Moreover, "[a] guilty plea .

. . renders irrelevant those constitutional violations not logically inconsistent with

the valid establishment of factual guilt and which do not stand in the way of

conviction if factual guilt is validly established." <u>Menna v. New York</u>, 423 U.S.

61, 62 n.2 (1975).  "This includes 'many of the most fundamental protections

afforded by the Constitution, such as the right to a jury trial, the right to confront

and cross-examine witnesses, and the right against self incrimination.'" <u>Sobina</u>,

475 F.3d at 165 (internal citations omitted).  "However, the Supreme Court has

articulated an exception to this rule in the double jeopardy context if the plain

language of the charging document demonstrates that a charge 'is one which the

State may not constitutionally prosecute.'" <u>Benge v. Johnson</u>, 2011 U.S. Dist.

LEXIS 34324, at *24 (D. Del. 2011) (quoting <u>Broce</u>, 488 U.S. at 575-76; citing

<u>Menna</u>, 423 U.S. at 62); <u>see</u> <u>United States v. Wallace</u>, 1996 U.S. Dist. LEXIS

19062, at *4 (E.D. Pa. 1996) ("As the Court in <u>Broce</u> recognized, there is an

exception to this rule when the defendant can show, based only on the indictment

and record of the case, that the government had no jurisdiction to prosecute him.")

(citing <u>Menna</u>, 423 U.S. at 62, 63 n.2; <u>Blackledge v. Perry</u>, 417 U.S. 21, 31

18

(1974)); see also Dickerson v. Vaughn, 90 F.3d 87, 92 n.1 (3d Cir. 1996)

("Because the parties have not raised the issue, we need not discuss the

proposition that in some limited instances a double jeopardy defense is not waived

by a guilty plea, at least where the constitutional violation is apparent on the fact

of the record.") (citing Broce, 488 U.S. at 575; Menna, 423 U.S. 61; Blackledge,

417 U.S. at 30); but see United States v. Kelly, 349 F. App'x 782, 784 n.2 (3d Cir.

2009) ("Kelly's double jeopardy claim is barred by his guilty plea.") (citing Broce,

488 U.S. at 571).  Because neither party has raised the issue, see (Docs. 20, 21,

22), and, as discussed in more detail below, Petitioner's double jeopardy claim

would be denied regardless of whether that claim was waived by Petitioner's

guilty plea, the Court will assume without deciding that Petitioner has not waived

his double jeopardy claim.

   Petitioner argues that the Double Jeopardy Clause of the Fifth Amendment

to the United States Constitution was violated when he was sentenced nine (9)

times for a single offense.[3]  (Doc. 1, p. 5).  Petitioner states that "[o]ver a period of

_____

[3] The Court notes that Petitioner also attempts to present this claim, in part, as a violation of the Pennsylvania Constitution.  (Doc. 1, p. 5).  However, such a claim does not present grounds for federal habeas relief because such a claim is based on state and not federal law.  See 28 U.S.C. § 2254(a) ("The Supreme Court, a Justice thereof, a circuit judge, or a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of

approximately ten months, [he] received and deposited monies from 20 clients and deposited those funds into his trust account." (Doc. 1, p. 5). Petitioner continues by claiming that "[d]uring that approximate same period, he [] made numerous checks in varying amounts to his personal account from a few hundred to a few thousand dollars." (Id.). According to Petitioner, on December 28, 2011, he "delivered a [check], named in count 3, which soon bounced for insufficient funds, before the New Years holiday, when [] Petitioner returned and attempted suicide." (Id.). Petitioner asserts that "[h]e performed no further acts as an attorney, was hospitalized in Virginia, hired Attorney Arbuckle to represent him and close his practice." (Id.). Petitioner claims that "[h]e returned to Pennsylvania to be arraigned and sentenced only." (Id.).

Additionally, Petitioner claims that during his sentencing "Judge Searer mentioned the last element of the offense generally only one time . . . saying that your Petitioner 'failed to do with the monies what he was obligated to do.'" (Doc. 1-3, p. 7). Petitioner argues that "[f]ailure to make the required the agreed payment or disposition,' (sic) being the last of four elements of the offen[s]e, as

_____

the Constitution or laws or treaties of the United States."); Abdul-Salaam v. Beard, 16 F. Supp. 3d 420, 438 (M.D. Pa. 2014) (Jones, J.) ("'[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions.'") (quoting Estelle v. McGuire, 502 U.S. 62, 67-68 (1991)).

well as the other elements of the offen[s]e charged, were charged without mention of any specific dates of when the various elements were committed and only one act of the fourth element was set forth" which was associated with count 3. (Doc. 1-3, p. 7).

In support of his double jeopardy claim, Petitioner cites to and discusses a number of cases from a variety of jurisdictions, as well as a number of statutes. (Id. at pp. 12-28). In addition to addressing section 3927, Petitioner also points to 18 Pa.C.S. §§ 3902[4] and 3903[5] in support of his claim. (Id. at pp. 6, 8, 15-17). Taking these authorities together, Petitioner argues that:

> one offense was committed, in this case, a singular offense under [Commonwealth v. Bavusa, 832 A.2d 1042 (Pa. 2003),] and the many other cases cited in this brief, is graded into six

---

[4] Section 3902 addresses consolidation of theft offenses. It states the following:

> Conduct denominated theft in this chapter constitutes a single offense. An accusation of theft may be supported by evidence that it was committed in any manner that would be theft under this chapter, notwithstanding the specification of a different manner in the complaint or indictment, subject only to the power of the court to ensure fair trial by granting a continuance or other appropriate relief where the conduct of the defense would be prejudiced by lack of fair notice or by surprise.

18 Pa.C.S. § 3902.

[5] Section 3903 provides grades for theft offenses. 18 Pa. C.S. § 3903.

> different classifications, providing progressively increasing
> categories from misdemeanor to felony 3, minimum ranges of
> sentence to Restorative sanctions to 16 months minimum in the
> upper end of the standard minimum sentence to seven years as
> a maximum sentence.

(Doc. 1-3, p. 28).  While Petitioner claims that "one offense was committed," he

appears to present two (2) distinct arguments in support.  First, Petitioner argues

that he personally only committed one (1) "single act, his last act," when he failed

to dispose of funds to "Mr. Hicks."  (Id. at p. 22).  And that, he was then punished

nine (9) times for that one (1) act.  (Id.).  Secondly, he argues that the facts support

a finding that only one (1) crime was committed because they were all part of a

single criminal episode.  (Id. at pp. 23-27) (citing Freundt, 883 A.2d at 503;

Gayman v. Pa. Dep't of Transp., Bureau of Driver Licensing, 65 A.3d 1041 (Pa.

Commw. Ct. 2013); Ladner v. United States, 358 U.S. 169 (1954)).

Initially, Respondent argues that Petitioner pled guilty to theft by failure to

make required disposition of funds, which is located at 18 Pa. C.S. § 3927(a).

(Doc. 21, p. 26).  Respondent then "point[s] out" 42 Pa.C.S. § 9765,[6] which

---

[6] Section 9765 states that:

> No crimes shall merge for sentencing purposes unless the crimes arise
> from a single criminal act and all the statutory elements of one
> offense are included in the statutory elements of the other offense.
> Where crimes merge for sentencing purposes, the court may
> sentencing the defendant only on the higher graded offense.

22

governs the merger of crimes for sentencing purposes.  (Doc. 21, p. 26).

Respondent then argues that Petitioner's reliance on 18 Pa.C.S. § 3902 "is

misplaced."  (Id.).  Respondent claims that section 3902 "cannot be interpreted to

mean that similar theft offenses must be consolidated.  Instead, as the comments to

the statute make clear, the purpose of this statute is to eliminate technical

distinctions of various definitions of 'theft.'"  (Id. at pp. 26-27).  Respondent

contends that Petitioner "pled guilty to nine [(9)] separate theft counts involving

nine [(9)] different victims."  (Id. at p. 27).  Respondent continues by asserting that

"[a]lthough [Petitioner] would have preferred to have been sentenced on just one

count, there is nothing that prohibits being sentenced for distinct acts involving

different victims and varying amounts of money over a nearly 9 month period of

time."  (Id.).  Thus, Respondent concludes, Petitioner's double jeopardy claim

should be dismissed.  (Id.).

The Double Jeopardy Clause of the Fifth Amendment to the United States

Constitution provides that "no person shall be . . . subject for the same offense to

be twice put in jeopardy of life or limb."  U.S. CONST. amend. V.  "Protections

against double jeopardy are ancient and we interpret the Double Jeopardy Clause

in light of its origin and the line of its growth."  United States v. Rivera, 384 F.3d

---

42 Pa.C.S. § 9765.

49, 54 (3d Cir. 2004) (citations, quotation marks, & footnote omitted).

The Double Jeopardy Clause "protects against three distinct abuses: a second prosecution for the same offense after acquittal; a second prosecution for the same offense after conviction; and multiple punishments for the same offense." United States v. Halper, 490 U.S. 435, 440 (1989). "Importantly, the Double Jeopardy Clause prohibits repeat trials for the same offense, not for the same conduct." Rigas, 605 F.3d at 204. "Accordingly, a defendant may be subject to multiple prosecutions for the same conduct if Congress intended to impose multiple punishments for that conduct." Id. (citing Albernaz v. United States, 450 U.S. 333, 344 (1981)). "In other words, a defendant generally may be subject to multiple prosecutions so long as each prosecution involves a different offense." Id. Thus, "'the Double Jeopardy Clause does no more than prevent the sentencing court from prescribing greater punishment than the legislature intended.'" Cangiarella v. Wenerowicz, 2015 U.S. Dist. LEXIS 40113, at *16 (M.D. Pa. 2015) (Munley, J.) (quoting Missouri v. Hunter, 459 U.S. 359, 366 (1983)); see Bell v. United States, 349 U.S. 81, 83-84 (1955).

"Consequently, when a legislature's intent to impose multiple punishments is clearly expressed in the criminal statute, the pertinent double jeopardy inquiry is limited to ensuring that 'the total punishment did not exceed that authorized by the

24

legislature.'" Spencer v. Carroll, 450 F. Supp. 2d 452, 455 (D. Del. 2006)

(quoting Jones v. Thomas, 491 U.S. 376, 381 (1989); Garrett, 471 U.S. at 778-79

(1985); Bell, 349 U.S. at 82).  However, when the legislative intent is unclear, and

the defendant was convicted of distinct statutory provisions, "courts apply the test

enunciated in Blockburger v. United States, 284 U.S. 299, 304, 76 L. Ed. 306, 52

S. Ct. 180 (1932) to construe the statutes."  United States v. Chorin, 322 F.3d 274,

281 (3d Cir. 2003) (citing Hunter, 459 U.S. 367).

> In Blockburger, the United States Supreme Court stated that:
>
> > [t]he applicable rule is that where the same act or transaction
> > constitutes a violation of two distinct statutory provisions, the
> > test to be applied to determine whether there are two offenses
> > or only one, is whether each provision requires proof of a fact
> > which the other does not.

Blockburger, 284 U.S. at 304.  As a result, under Blockburger, "a court looks to

the statutory elements of the crime charged to determine if there is any overlap."

Chorin, 322 F.3d at 281.

> However, the United States Court of Appeals for the Third Circuit has

stated that "[t]he Blockburger test is a tool for determining whether Congress

intended to separately punish violations of distinct statutory provisions and is

therefore inapplicable where a single statutory provision was violated."  Rigas,

605 F.3d at 204.  Therefore, "distinct statutory provisions are a condition

precedent to applying the <u>Blockburger</u> test." <u>Rigas</u>, 605 F.3d at 204.  In this matter, Petitioner plead guilty to nine (9) separate violations of a single statutory provision, 18 Pa.C.S. § 3927(a).  Thus, the <u>Blockburger</u> test does not apply.

Rather, "[w]hen, as here, a defendant is convicted of violating one statute multiple times, 'the question is whether the facts underlying each count were intended by [the legislature] to constitute separate "'units of prosecution.'" <u>Fink v. Phelps</u>, 2010 U.S. Dist. LEXIS 51777, at *12 (D. Del. 2010) (quoting <u>Bell v. United States</u>, 349 U.S. 81, 83-84 (1955)); <u>see</u> <u>United States v. Tann</u>, 577 F.3d 533, 536 (3d Cir. 2009) (citing <u>Bell</u>, 349 U.S. at 81); <u>Cangiarella</u>, 2015 U.S. Dist. LEXIS 40113, at *15-16 ("[t]he United States Supreme Court has held that in determining whether the Double Jeopardy Clause prevents multiple punishments for the 'same offense' the legislative intent in defining the crime must be examined.") (quoting <u>Hunter</u>, 459 U.S. 366); <u>Panuski v. Wesley</u>, 2015 U.S. Dist. LEXIS 133450, at *17 (D. Del. 2015) (alterations in original) (quoting <u>Bell</u>, 349 U.S. at 83-84) ("[W]hen a defendant is convicted of violating one statute multiple times, 'the question is whether the facts underlying each count were intended by [the legislature] to constitute separate "units" of prosecution.'"); <u>Spencer</u>, 450 F. Supp. 2d at 455 ("when a sentencing court imposes multiple punishments for violating a single federal statute, and Congress' intent is not clear, the reviewing

court must determine the 'unit of prosecution' under the state, or the precise act or conduct criminalized under the statute, as intended by Congress.") (citing <u>Bell</u>, 349 U.S. at 83-84; <u>Sanabria v. United States</u>, 437 U.S. 54, 69-70 (1978); <u>United States v. Universal C.I.T. Credit Corp.</u>, 344 U.S. 218, 221 (1952)).  "In other words, when determining whether the imposition of multiple punishments and/or convictions in a single prosecution violates the double jeopardy clause, the 'clearly established' Supreme Court precedent requires a court to ascertain whether the multiple punishments and/or convictions comply with the legislative intent of the applicable statutes."  <u>Fink</u>, 2010 U.S. Dist. LEXIS 51777, at *12-13. Furthermore, "[d]etermining the allowable unit of prosecution depends, in part, on the 'key element' of the offense."  <u>Spencer</u>, 450 F. Supp. 2d at 455 (citing <u>Ebeling v. Morgan</u>, 237 U.S. 625, 629 (1915); <u>Bell</u>, 349 U.S. at 81).

Said differently, "[i]n order for multiple punishments to constitute a double jeopardy violation, the multiple charged offenses must be the same in law <u>and</u> in fact."  <u>United States v. Finley</u>, 726 F.3d 483, 495 (3d Cir. 2013) (emphasis in original) (citing <u>United States v. Felton</u>, 753 F.2d 276, 278 (3d Cir. 1985)).  "A determination of whether the multiple charged offenses are the same in law involves consideration of whether the statutory provision in question creates multiple offenses or only one offense that can be proven in alternative ways."  <u>Id.</u>

(citing Rigas, 605 F.3d at 207). "In contrast, a determination as to whether the two charged offenses are the same in fact involves consideration of whether the given conduct violated the statute multiple times or only once." Finley, 726 F.3d at 495 (citing Rigas, 605 F.3d at 212). Therefore, "'[t]he Double Jeopardy Clause is not implicated when multiple separate violations of the same provision are charged in multiple counts.'" Id. (quoting United States v. Snyder, 189 F.3d 640, 647 (7th Cir. 1999)).

Here, Petitioner plead guilty to and was sentenced on nine (9) separate violations of 18 Pa.C.S. § 3927(a). See (Doc. 1, p. 1). Section 3927(a) provides, in relevant part:

> A person who obtains property upon agreement, or subject to a known legal obligation, to make specified payments or other disposition, whether from such property or its proceeds or from his own property to be reserved in equivalent amount, is guilty of theft if he intentionally deals with the property obtained as his own and fails to make the required payment or disposition. The foregoing applies notwithstanding that it may be impossible to identify particular property as belonging to the victim at the time of the failure of the actor to make the required payment or disposition.

18 Pa.C.S. § 3927(a). The Supreme Court of Pennsylvania has held that section 3927(a) contains four (4) elements, which are as follows:

> "1. The obtaining property of another; 2. Subject to an agreement or known legal obligation upon the recip[ient] to

make specified payments or other disposition thereof; 3.
Intentional dealing with the property obtained as the
defendant's own; and 4. Failure of the defendant to make the
required disposition of the property."

Turrell, 584 A.2d at 884 (quoting Pa. v. Ohle, 470 F.2d 61, 69 (Pa. 1983)); Pa. v.

Decker, 2015 Pa. Super. Unpub. LEXIS 96, at *27-28 (Pa. Super. Ct. Jan. 8, 2015)

(non-precedential) (citing Pa. v. Crafton, 367 A.2d 1092, 1094-95 (Pa. Super. Ct.

1976), corrected, 599 A.2d 1353 (1991)).  The Pennsylvania Supreme Court has

also held that a violation of section 3927(a):

occurs when an attorney evinces an intent not to make the
required payment or disposition.  Until such time as payment is
due, an attorney cannot be considered in violation of § 3927(a),
although he very well may have violated the Rule of
Professional Conduct.  However, assuming all the other
elements have been satisfied, once payment is required and an
attorney fails to make such payment, then a violation of §
3927(a) has occurred.

Turrell, 584 A.2d at 886.

"It is clear that the language of Section 3927(a) requires convictions of any

actor that uses property of another inappropriately and fails to perform according

to the legal obligation."  Pa. v. Perretta-Rosepink, 2015 Pa. Super. Unpub. LEXIS

2635, at *33 (Pa. Super. Ct. Feb. 6, 2015) (non-precedential).  Importantly,

Pennsylvania Courts have found that "[i]t is only when the required payments are

not made that criminal liability attaches" pursuant to section 3927(a).  Crafton,

367 A.2d at 1096; see Turrell, 584 A.2d at 886 ("We agree that criminal liability attaches as soon as the failure to make a required distribution of funds occurs . . . . The crime is complete when all of its elements have been fulfilled, and, once completed, it cannot be undone.").

Before the Pennsylvania Superior Court, Petitioner's claim that the "nine counts should have merged for sentencing purposes, based on the fact that his conduct should be considered a single crime" was rejected.  Gates, 1255 MDA 2013, at p. 10.  Specifically, the Superior Court found that Petitioner "failed to properly dispose of the funds of nine clients, nine separate times." Id.  Therefore, the Superior Court concluded that merger was "inapplicable" because Petitioner's "conduct was not part of a single criminal episode; rather, he violated section 3927 each time he committed theft against each of his nine victims." Id.

The Pennsylvania Superior Court's discussion regarding Petitioner's merger claim, while brief, was not contrary to or an unreasonable application of Supreme Court precedent.  First, Pennsylvania courts have found that a theft under section 3927(a) becomes complete only when there is a failure to make the required disposition of the property in question.  Turrell, 584 A.2d at 884 (quoting Ohle, 470 F.2d at 69); Decker, 2015 Pa. Super. Unpub. LEXIS 96, at *27-28 (citing Crafton, 367 A.2d at 1094-95).  Here, the Superior Court concluded that Petitioner

"violated section 3927 each time he committed theft against each of his nine victims." Gates, 1255 MDA 2013, at p. 11. Reaching this determination implies that the Pennsylvania Superior Court determined that each count of theft by failure to make required disposition of funds received was complete when Petitioner "failed to properly dispose of the funds of nine clients, nine separate times." Id. Thus, the Superior Court determined that each count was premised on separate and distinct facts. Id. Consequently, Petitioner's attempt to invoke the protection of the Double Jeopardy Clause is without merit because he was not punished nine (9) times for the same offense. Rather, Petitioner was sentenced on the nine (9) factually distinct offenses to which he plead guilty. (Doc. 19-2, pp. 3-8); Gates, 1255 MDA 2013, at pp. 4, 9, 11. Therefore, the Double Jeopardy Clause is not implicated and thus, the Superior Court's decision was not contrary to or an unreasonable application of Supreme Court precedent.

Additionally, the Superior Court's determination that Petitioner "failed to properly dispose of the funds of nine clients, nine separate times" was not based on an unreasonable determination of the facts. Gates, 1255 MDA 2013, at p. 11. "A state court decision is based on 'an unreasonable determination of the facts' only if the state court's factual findings are '"objectively unreasonable in light of the evidence presented in the state-court proceeding."'" Eley v. Erickson, 712

F.3d 837, 846 (3d Cir. 2013) (quoting <u>Miller-El v. Cockrell</u>, 537 U.S. 322, 327 (2003)).  "[T]he factual determinations of state trial and appellate courts are presumed to be correct."  <u>Eley</u>, 712 F.3d at 846 (citing <u>Duncan v. Morton</u>, 256 F.3d 189, 196 (3d Cir. 2001)).  Moreover, "[t]he petitioner bears the burden of 'rebutting the presumption by "clear and convincing evidence."'[footnote omitted]"  <u>Id.</u> (quoting <u>Rice v. Collins</u>, 546 U.S. 333, 339 (2006)).

During Petitioner's plea hearing, the Commonwealth provided specific details of the nine (9) offense to which Petitioner pled guilty.  (Doc. 19-2, pp. 5-12).  Specifically, the Commonwealth stated that for Count 3, Petitioner received "about $91,000 of funds that he was supposed to disperse to [a] nursing home on various occasions."  (<u>Id.</u> at p. 5).  Petitioner "spent [that] money without having properly–he disposed of improperly."  (<u>Id.</u>).  Count 7 was based on Petitioner received "approximately $168,000" which was "to be distributed to the estate of Ruth Chilcote, but [Petitioner] intentionally kept the property and failed to make the required payment or disposition."  (<u>Id.</u> at p. 6).  Count 11 was based on Petitioner receiving money from "an estate of John Stoudt."  (<u>Id.</u>).  Petitioner "was to dispose of that money by providing it to a number of heirs.  He did not do that.  The value there was greater than $50,000 but less than $100,000."  (<u>Id.</u>).  For Count 15, Petitioner "received $10,000 from Walter and/or Kay Spacht."  (<u>Id.</u>).

Petitioner "held that money in escrow. It was to be held in escrow. [Petitioner] ultimately spent that money. He dealt with it as his own and he failed to make the required payment or disposition." (Doc. 19-2, p. 6). Count 19 was based on Petitioner receiving "more than $50,000 by less than $100,000 from th[e] estate of [Earnest Stains] that he was supposed to dispose of to several of Mr. Stains' heirs." (Id. at p. 7). Petitioner "intentionally dealt with the property obtained as his own" and "failed to make the required payment or disposition." (Id.). In regards to Count 23, Petitioner "received between $2,000 and $25,000 on behalf of the estate [of Earl Clark]." (Id.). Petitioner "was supposed to dispose of that and give that to one of heirs. He did not." (Id.). Petitioner "intentionally dealt with the property obtained as his own and failed to make the required payment or disposition." (Id.). For Count 27, Petitioner "took money, accepted money from a Robert Montler." (Id.). The amount was "greater than $2,000 but less than $25,000." (Id.). "That money was supposed to be used to purchase some land." (Id.). However, the Commonwealth stated that Petitioner "dealt with that money that he obtained as his own" and "failed to make the required disposition of it." (Id.). Count 31 was based on Petitioner's acceptance of money from "Scott Glass" in an amount "greater than $2,000 but less than $25,000, for property . . . ." (Id. at pp. 7-8). Petitioner "intentionally dealt with that property obtained as his own and

did not make the required payment or disposition." (Doc. 19-2, p. 8). For Count

35, Petitioner "received money that was in an amount greater than $200 but less

than $2,000 that belonged to Michelle Miller." (Id.). Petitioner "intentionally

failed to make the required disposition of funds." (Id.).

Thus, based on the foregoing, the Superior Court's conclusion that

Petitioner "failed to properly dispose of the funds of nine clients, nine separate

times" was not based on an objectively unreasonable determination of the facts

produced at Petitioner's plea hearing. As a result, Petitioner's double jeopardy

claim will be denied.

### E.   Petitioner's Challenge Regarding His Guilty Plea

The Court notes that, although not identified as a separate claim, Petitioner

intertwines an argument throughout portions of his petition and memoranda that

his plea of guilty was not knowing, voluntary, and intelligent. See (Doc. 1, p. 8);

(Doc. 1-3, pp. 2-3, 8, 27, 42, 45-46, 48, 52); (Doc. 22, pp. 2, 5-9). Specifically,

Petitioner claims that the evidence presented during his plea hearing did not

sufficiently establish each and every element of the crimes for which he pled

guilty and that he was unaware of the "minimum or maximum sentences that the

court could consider." See (Id.).

### i. **Federal Question**

Initially, it is determined that Petitioner's claim regarding his plea fails to present a federal question. Pursuant to 28 U.S.C. § 2254(a), federal habeas relief is only available for claims that involve a federal question independent of the state claim. "This Court will not take up a question of federal law presented in a case 'if the decision of [the state] court rests on a state law ground that is independent of the federal question and adequate to support the judgment.'" Lee v. Kemna, 534 U.S. 362, 375 (2002). "The Rule applies with equal force whether the state-law ground is substantive or procedural." Id.

Upon review, it is determined that Petitioner's claim that his plea was defective does not present a federal question because the basis for this claim lies solely in state law, is completely independent of any federal question, and is adequate to support the judgment. The Superior Court reviewed and denied this claim because the allegedly defective colloquy rested on a state law ground independent of a federal question. (Doc. 1-2, pp. 4-5); Gates, 1255 MDA 2013, at pp. 4-5. The Superior Court reasoned that because the alleged defective colloquy was in compliance with Pennsylvania Rule of Criminal Procedure 590, the grounds for the colloquy rested in state law. (Id.).

In general, "a state court's interpretation of state law . . . binds a federal

35

court sitting in habeas corpus." <u>Bradshaw v. Richey</u>, 546 U.S. 74, 76 (2005),

<u>rev'd</u> <u>on</u> <u>other</u> <u>grounds</u>, 498 F.3d 344 (6th Cir. 2007).  Therefore, because the

Superior Court determined that the grounds for the defective plea claim rested on

state law, Petitioner's defective plea claim will be dismissed because it fails to

present a federal question independent of state law.  <u>Solano v. Lamas</u>, 2014 U.S.

Dist. LEXIS 78452, at *20-22 (M.D. Pa. 2014) (Nealon, J.).

  **ii**. <u>**Merits**</u>

   To the extent that Petitioner's claim regarding his plea amounts to a

challenge as to whether his plea was knowing, voluntary, and intelligent under the

Due Process Clause of the Fourteenth Amendment to the United States

Constitution, as discussed in more detail below, it is without merit.[7]

---

[7] The Court notes that the Pennsylvania Superior Court, in ruling on Petitioner's claims concerning "the adequacy of the trial judge's oral guilty plea colloquy," which specifically included a claim that "the judge's colloquy did not comply with legal requirements showing that [Petitioner's] conduct proved all the elements of the offenses for which he pled guilty and that the colloquy failed to set forth sufficient facts to support the criminal elements," <u>Gates</u>, 1255 MDA 2013, at p. 4, initially found that these claims were waived.  <u>Id.</u>  However, the Superior Court went on to state that "even if [it] did not deem these issues waived, [the Superior Court] would conclude that they are frivolous."  <u>Id.</u>  The United States Court of Appeals for the Third Circuit has held that if a state court considers the merits in the alternative then section 2254(d) deference applies.  <u>Rolan v. Coleman</u>, 680 F.3d 311, 319-21 (3d Cir. 2012); <u>Branthafer v. Glunt</u>, 2015 U.S. Dist. LEXIS 126142, at *15 (M.D. Pa. 2015) (Conaboy, J.) ("If the state court considers the merits in the alternative or in a summary fashion, the § 2254(d) deferential standard of review applies.") (citing <u>Rolan</u>, 680 F.3d at 319-21);

To comport with the Due Process Clause, a defendant's plea of guilty must be voluntary and intelligent. Boykin v. Al., 395 U.S. 238 (1969). The "long standing test for determining the validity of a guilty plea is 'whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant.'" Hill v. Lockhart, 474 U.S. 52, 56 (1985) (quoting N.C. v. Alford, 400 U.S. 25, 31 (1970)). A guilty plea may be constitutionally infirm if the defendant failed to understand the constitutional rights he was waiving by pleading guilty or had an incomplete understanding of the charges lodged against him. Henderson v. Morgan, 426 U.S. 637, 645 n.13 (1976). "A defendant pleading guilty must first receive 'real notice of the true nature of the charge against him . . . .'" Taylor v. Piazza, 2012 U.S. Dist. LEXIS 73474, at *28 (E.D. Pa. 2012) (quoting Smith v. O'Grady, 312 U.S. 329, 334 (1941)). Thus, "[i]n order for a plea to be considered intelligent, the accused must have sufficient understanding of the charges against him so that he can make an actual admission of guilt and understand the nature of the constitutional protections he is waiving." Id. (citing Henderson, 426 U.S. at 645 n.13). Furthermore, the "knowing, voluntary and intelligent" standard "requires the defendant to 'be advised of and

---

Chadwick v. Janecka, 312 F.3d 597, 605-07 (3d Cir. 2002); Hunterson v. Sabato, 308 F.3d 236, 246 (3d Cir. 2002)).

understand the <u>direct</u> consequences of a plea.'" <u>Virgin Islands v. Greenaway</u>, 379

F. App'x 247, 250 (3d Cir. 2010) (emphasis in original) (quoting <u>United States v.</u>

<u>Salmon</u>, 944 F.2d 1106, 1130 (3d Cir. 1991)).  The United States Supreme Court

"explicitly included 'the permissible range of sentences' as one of the factors that

defendants must be aware of before pleading guilty." <u>Jamison v. Klem</u>, 544 F.3d

266, 277 (3d Cir. 2008) (citing <u>Boykin</u>, 395 U.S. at 244 n.7).  "However, the

failure to specifically articulate the <u>Boykin</u> rights does not carry the date for the

defendant if the circumstances otherwise establish the plea was constitutionally

acceptable." <u>United States v. Stewart</u>, 977 F.2d 81, 85 (3d Cir. 1992).

Where the trial court followed the dictates of the comment to Pennsylvania

Rule of Criminal Procedure 590,[8] "[f]ederal law does not require a more detailed

---

[8] The comment to Rule 590 provides:

At a minimum the judge should ask questions to elicit the following
information:
    (1) Does the defendant understand the nature of the charges to which
he or she is pleading guilty or nolo contendere?
    (2) Is there a factual basis for the plea?
    (3) Does the defendant understand that he or she has the right to trial
by jury?
    (4) Does the defendant understand that he or she is presumed
innocent until found guilty?
    (5) Is the defendant aware of the permissible range of sentences
and/or fines for the offenses charged?
    (6) Is the defendant aware that the judge is not bound by the terms of
any plea agreement tendered unless the judge accepts such

guilty plea colloquy." Carrion v. Corbett, 2008 U.S. Dist. LEXIS 47127, at *15

(E.D. Pa. 2008) (finding that the guilty plea colloquy met the state law standards

and that the petitioner was aware of his rights and intelligently and knowingly

waived them).   Moreover, Pennsylvania law allows the guilty plea colloquy to be

conducted by defense counsel or the attorney for the Commonwealth, as permitted

by the judge.  Pa. v. Moser, 921 A.2d 526, 529 (Pa. Super. Ct. 2007); see Suarez v.

Pa., 2014 U.S. Dist. LEXIS 87461, at *18 (M.D. Pa. 2014) (Nealon, J.) (citing

Moser, 921 A.2d at 529).   "[T]he examination does not have to be solely oral.

Nothing precludes the use of a written colloquy that is read, completed, and signed

by the defendant, made part of the record, and supplemented by some on-the-

record oral examination."  Moser, 921 A.2d at 529; see Suarez, 2014 U.S. Dist.

LEXIS 87461, at *18 (citations omitted); see also Keel v. Coleman, 2013 U.S.

Dist. 13721, at *21-22 (W.D. Pa. 2013) (applying Moser and rejecting the habeas

petitioner's claim his guilty plea was not voluntary, knowingly, and intelligently

entered).

A habeas petitioner challenging the voluntary nature of his or her guilty plea

---

agreement?
(7) Does the defendant understand that the Commonwealth has a right
to have a jury decide the degree of guilt if the defendant pleads guilty
to murder generally?

faces a heavy burden.  <u>Zilich v. Reid</u>, 36 F.3d 317, 320 (3d Cir. 1994).  "[T]he

representations of the defendant, his lawyer, and the prosecutor at [a plea] hearing,

as well as any findings made by the judge accepting the plea, constitute a

formidable barrier in any subsequent collateral proceedings.  Solemn declarations

made in open court carry a strong presumption of verity."  <u>Id.</u> (citing <u>Blackledge v.

Allison</u>, 431 U.S. 63, 74 (1977)).  Furthermore, "[f]ailure on the part of the trial

judge to expressly delineate all of the elements of a specific offense will not create

a due process violation if the totality of the circumstances indicates that the

defendant was aware of the nature of the charges to which he was pleading

guilty."  <u>Taylor</u>, 2012 U.S. Dist. LEXIS 73474, at *34-35 (citing <u>Lepre</u>, 2008 U.S.

Dist. LEXIS 48421, at *12-13).  In <u>Meyers v. Gillis</u>,[9] the United States Court of

Appeals for the Third Circuit held that:

> the Due Process Clause of the Fourteenth Amendment to the
> United States Constitution does not require an on-the-record
> development of the factual basis supporting a guilty plea before
> the entry of the plea, and the failure of a state court to elicit a
> factual basis before accepting a guilty plea does not in itself
> provide a ground for habeas corpus relief under 28 U.S.C. §
> 2254.

<u>Meyers</u>, 93 F.3d at 1151.

On appeal, the Pennsylvania Superior Court addressed "[s]everal" issues

---

[9]  93 F.3d 1147 (3d Cir. 1996).

raised by Petitioner that concerned "the adequacy of the trial judge's oral guilty

plea colloquy." (Doc. 1-2, p. 4); <u>Gates</u>, 1255 MDA 2013, at p. 4. "Specifically,

[Petitioner] claim[ed] the judge's colloquy did not comply with legal requirements

showing that his conduct proved all the elements of the offenses for which he pled

guilty and that the colloquy failed to set forth sufficient facts to support the

criminal elements." (<u>Id.</u>). Initially, the Superior Court noted that "[b]ecause

[Petitioner] failed to include these issues in his timely filed post-sentence motion

and did not object during the colloquy or file a motion to withdraw his plea,

technically these claims are waived." (<u>Id.</u>) (citing PA. R. CRIM. P. 702(B)(1)(a)(i);

PA. R. CRIM. P. 702(B)(1)(c)). "However," the Superior Court stated, "even if we

did not deem these issues waived, we would conclude that they are frivolous."

(<u>Id.</u>) (citing <u>Pa. v. Hernandez</u>, 783 A.2d 784 (Pa. Super. 2001)). In support of that

finding, the Superior Court determined that "[a] review of [Petitioner's] oral and

written guilty plea colloquies demonstrates that the judge complied with the

applicable rules regarding the tender of pleas and plea agreements." (<u>Id.</u>) (citing

PA. R. CRIM. P. 590). "Specifically, [the court] discussed the nature of the charges

brought against [Petitioner], . . . and the deputy attorney general gave detailed

accounts of each of [Petitioner's] nine victims as it relates to the factual bases of

his plea." (<u>Id.</u> at p. 5) (internal citations omitted). "Accordingly," the Superior

Court held, "the oral plea colloquy sufficiently set forth [Petitioner's] conduct in relation to the elements of the offenses for which he pled guilty and that there was a sufficient factual basis for his plea." (Doc. 1-2, p. 5); <u>Gates</u>, 1255 MDA 2013, at p. 5. The Superior Court also noted that Petitioner "signed a written plea colloquy acknowledging the extent of his criminal actions, indicating that he understood the factual nature of the offenses to which he was pleading guilty and that he was aware of the permissible range of sentences and/or fines that could be imposed." (Doc. 1-2, p. 8); <u>Gates</u>, 1255 MDA 2013, at p. 8. "Moreover," the Superior Court found, Petitioner "stated that he understood that the trial court could impose consecutive sentences." (<u>Id.</u>).

While the Superior Court did not specifically address the applicable Supreme Court precedent in reaching its decision regarding Petitioner's challenge to his plea colloquy, "'[a] state court decision is not contrary to . . . clearly established Federal law simply because the [state] court did not cite [applicable Supreme Court precedent].'" <u>Lepre</u>, 2008 U.S. Dist. LEXIS 48421, at *8 (alterations in original) (quoting <u>Mitchell v. Esparza</u>, 540 U.S. 12, 16 (2003)). "Instead, the reviewing court must focus on whether the state court's reasoning or result contradicts applicable Supreme Court precedent." <u>Id.</u> (citing <u>Mitchell</u>, 540 U.S. at 16). In reviewing the Superior Court's analysis, it is determined that the

42

Superior Court addressed the Petitioner's claims regarding his plea in accordance with the United States Supreme Court's command that a valid guilty plea is one that is voluntary, knowing, and intelligent.  See Suarez, 2014 U.S. Dist. LEXIS 87461, at *24-28; Taylor, 2012 U.S. Dist. LEXIS 73474, at *34-39; Burke v. Kerestes, 2010 U.S. Dist. LEXIS 76225 (E.D. Pa. 2010); see also Brown v. Rozum, 2014 U.S. Dist. LEXIS 100532, at *31-48 (M.D. Pa. 2015) (Nealon, J.). As such, the analysis of Petitioner's plea by the Superior Court was not contrary to clearly established Supreme Court precedent.

Based on the above determination, the Court must now determine whether the Superior Court's decision that the Petitioner's challenges to his plea were meritless, Gates, 1255 MDA 2013, at p. 4, was based on an unreasonable determination of facts in light of the evidence presented at the plea hearing.

In support of this determination, the Superior Court cited to the sentencing court's discussion of the "nature of the charges brought against [Petitioner]" and the "detailed accounts" provided by the deputy attorney general regarding "each of [Petitioner's] nine victims as it relate[d] to the factual bases of his plea" in support of its determination that Petitioner's "oral plea colloquy sufficiently set forth [Petitioner's] conduct in relation to the elements of the offenses for which he pled guilty and that there was a sufficient factual basis for his plea."  (Doc. 1-2, p. 5);

43

Gates, 1255 MDA 2013, at p. 5.

As discussed above, the Commonwealth provided specific details of the nine (9) offense to which Petitioner pled guilty during Petitioner's plea hearing. (Doc. 19-2, pp. 4-11). Specifically, the Commonwealth stated that for Count 3, Petitioner received "about $91,000 of funds that he was supposed to disperse to [a] nursing home on various occasions." (Id. at p. 4). Petitioner "spent [that] money without having properly–he disposed of improperly." (Id.). Count 7 was based on Petitioner received "approximately $168,000" which was "to be distributed to the estate of Ruth Chilcote, but [Petitioner] intentionally kept the property and failed to make the required payment or disposition." (Id. at p. 5). Count 11 was based on Petitioner receiving money from "an estate of John Stoudt." (Id.). Petitioner "was to dispose of that money by providing it to a number of heirs.  He did not do that. The value there was greater than $50,000 but less than $100,000." (Id.). For Count 15, Petitioner "received $10,000 from Walter and/or Kay Spacht." (Id.). Petitioner "held that money in escrow.  It was to be held in escrow. [Petitioner] ultimately spent that money.  He dealt with it as his own and he failed to make the required payment or disposition." (Id.).  Count 19 was based on Petitioner receiving "more than $50,000 by less than $100,000 from th[e] estate of [Earnest Stains] that he was supposed to dispose of to several of Mr. Stains' heirs." (Id. at

44

p. 6).  Petitioner "intentionally dealt with the property obtained as his own" and

"failed to make the required payment or disposition."  (Doc. 19-2, p. 6).  In regards

to Count 23, Petitioner "received between $2,000 and $25,000 on behalf of the

estate [of Earl Clark]."  (Id. at p. 7).  Petitioner "was supposed to dispose of that

and give that to one of heirs.  He did not."  (Id.).  Petitioner "intentionally dealt

with the property obtained as his own and failed to make the required payment or

disposition."  (Id.).  For Count 27, Petitioner "took money, accepted money from a

Robert Montler."  (Id.).  The amount was "greater than $2,000 but less than

$25,000."  (Id.).  "That money was supposed to be used to purchase some land."

(Id.).  However, the Commonwealth stated that Petitioner "dealt with that money

that he obtained as his own" and "failed to make the required disposition of it."

(Id.).  Count 31 was based on Petitioner's acceptance of money from "Scott Glass"

in an amount "greater than $2,000 but less than $25,000, for property . . . ."  (Id. at

pp. 7-8).  Petitioner "intentionally dealt with that property obtained as his own and

did not make the required payment or disposition."  (Id. at p. 8).  For Count 35,

Petitioner "received money that was in an amount greater than $200 but less than

$2,000 that belonged to Michelle Miller."  (Id.).  Petitioner "intentionally failed to

make the required disposition of funds."  (Id.).

　　　　Based upon the evidence set forth by the Commonwealth at Petitioner's

guilty plea hearing, the court then engaged Petitioner in an oral colloquy.

Specifically, the court asked Petitioner if he was "able to hear those facts that were

recited by the Commonwealth?" (Doc. 19-2, p. 9). Petitioner replied that he was

able to hear the Commonwealth's recitation. (Id.). Petitioner was then asked by

the court whether "[t]hose are the facts upon which you're entering your plea?"

(Id.). Petitioner responded by stating "[t]hat's correct, Your Honor." (Id.).

Moreover, Petitioner confirmed that he understood that "the agreement also

included that the sentence was to be set by the Court at the Court's discretion as

well as an order for [Petitioner] to pay restitution." (Id. at p. 12). Petitioner also

confirmed that he had completed a written guilty plea colloquy and answered the

questions contained therein truthfully. (Id. at p. 9). Among the answers given in

his written colloquy, Petitioner indicated that he understood the "factual nature of

the offenses to which [he was] pleading guilty." (Doc. 19-1, p. 3). Further,

Petitioner also affirmed that his "lawyer explained to [him] the elements of the

criminal offenses to which" he plead guilty and, notably, that he committed those

offenses. (Id.). Petitioner also indicated in his written colloquy that he was

"aware of the permissible range of sentence and/or fines that can be imposed for

the offenses to which you are pleading guilty." (Id. at p. 4). Petitioner also

affirmed that he was "aware of the maximum sentence and/or fine, which the

Court could impose upon you for each of the offenses to which you are pleading guilty." (Doc. 19-1, p. 4). Moreover, Petitioner indicated during his oral colloquy that he did not have "any questions about any of the rights that are spelled out on that form" and that his "attorney explained them very carefully." (Doc. 19-2, p. 10). Subsequent to the oral colloquy, the court found that there was a factual basis for the entry of the guilty plea. (Id.). Further, the court found, upon consideration of the oral and written colloquies, that Petitioner's plea was "entered knowingly, voluntarily and intelligently." (Id.).

Therefore, applying the presumption of correctness to the findings of fact by the trial and appellate court, neither of which Petitioner has successfully rebutted by presenting clear and convincing evidence to the contrary and based upon the above discussion, the Superior Court's determination was not an unreasonable determination in light of the facts. Thus, to the extent that Petitioner claims that his plea was invalid is without merit and will be denied.

**F.** **Petitioner's Claims That His Sentence Exceeds the Minimum and Maximum Sentences and the Trial Court Abused its Discretion by Imposing an Excessive Aggregate Sentence Based upon Illegal and Improper Considerations Fail to Present a Federal Question**

Initially, Petitioner argues that the sentence he received, four and a half (4 ½) to twelve (12) years in prison and two (2) years probation, should be vacated

because it "exceeded the maximum sentence of seven years for the offense."

(Doc. 1, p. 7).

Respondent contends that Petitioner's assertion that the "trial court

exceeded the maximum sentence . . . is completely belied by the record" and fails

to present a federal question.  (Doc. 21, p. 27).  Respondent asserts that Petitioner

"pled guilty to eight counts that were graded as felonies of the third degree.

Pursuant to Pennsylvania law, each felony of the third degree was punishable by

up to seven years imprisonment."  (Id.) (citing 18 Pa.C.S. § 1103(3)).  Respondent

also notes that Petitioner "pled guilty to a misdemeanor of the first degree which

was punishable by up to five years imprisonment."  (Id.) (citing 18 Pa.C.S. §

1104(1)).  As to counts 3, 11, 19, 23, 27 and 31, Petitioner "received separate

sentences of not less than six months, nor more than 18 months . . . ."  (Id. at p.

10).  For counts 7 and 15, Petitioner received separate "sentences of not less than

nine months, nor more than 18 months . . . ."  (Id.).  As for count 35, Petitioner

received a probationary sentence of two (2) years "that was ordered to be served

consecutively to the sentence imposed on Count 31."  (Id.).  According to

Respondent, "[j]ust because [Petitioner] received an aggregate maximum sentence

of 12 years does not mean that his sentence was illegal."  (Id.).  "Instead,"

Respondent's argue, Petitioner "received a maximum of 18 months on each of the

felonies; a range that was certainly within the statutory limits." (Doc. 21, p. 10).

As a result, Respondent contends that "the general rule in federal habeas proceedings is that 'a federal court will not reevaluate a sentence in a habeas corpus proceeding unless it exceeds the statutory limits.'" (Id. at p. 28) (quoting Milton v. Graterford, 2010 U.S. Dist. LEXIS 128388 (M.D. Pa. 2010) (Conner, J.); citing Coleman v. Folino, 2010 U.S. Dist. LEXIS 66044 (W.D. Pa. 2010), adopted by, 2010 U.S. Dist. LEXIS 66165 (W.D. Pa. 2010); DeSavage v. Lawler, 2010 U.S. Dist. LEXIS 7004 (W.D. Pa. 2010)).

Petitioner also argues that the sentencing court considered "illegal and improper" factors in reaching its ultimate determination. (Doc. 1, p. 10). Specifically, Petitioner asserts that the sentencing court "considered the effect on other attorneys, in . . . [its] explanation of considering the four statute mandated considerations, Restitution, Rehabilitation, Deterrence, and Punishment." (Id.). According to Petitioner, the sentencing court's emphasis on "the impact of the crime on the Bar, [was] not a permissible consideration under the Sentencing Code." (Id.). Moreover, Petitioner went on to state that "[e]ffect on other attorney's is not a mandatory consideration." (Id.). Also, Petitioner contends that the sentencing court also "emphasized the impact of the crime on the victims, none of which chose to speak out concerning the impact of the crime." (Id. at p. 67).

49

Additionally, Petitioner challenges the sentencing court's allegedly basing its sentence "on 'the charging function' . . . ." (Doc. 1, p. 67). On this last point, Petitioner claims that the sentencing court "thereby delegat[ed its] sole discretion illegally to the prosecutor to determine the sentence based on 'the way the case was charged . . . .'" (Id. at p. 10).

Respondent contends that Petitioner's "arguments that the trial court abused its discretion by considering impermissible factors and that it exceeded the standard guideline ranges are similarly non-cognizable and therefore should be dismissed." (Doc. 21, p. 28) (citing Coleman, 2010 U.S. Dist. LEXIS 66044, at *25-26, adopted by, 2010 U.S. Dist. LEXIS 66165; Foust v. Brooks, 2006 U.S. Dist. LEXIS 101781, at *23 (W.D. Pa. 2006), adopted by, 2006 U.S. Dist. LEXIS 50490 (W.D. Pa. 2006); Corbett v. Grace, 2006 U.S. Dist. LEXIS 101268, at *6 (W.D. Pa. 2006), adopted by, 2006 U.S. Dist. LEXIS 18110 (W.D. Pa. 2006); Yarbrough v. Klopotoski, 2009 U.S. Dist. LEXIS 121330, at *82 (E.D. Pa. 2009), adopted by, 2009 U.S. Dist. LEXIS 114726 (E.D. Pa. 2009)).

"The Supreme Court has held that habeas matters involving a state court's discretionary acts in sentencing proceedings are not subject to federal review, unless a specific constitutional claim is allegedly violated." Milton, 2010 U.S. Dist. LEXIS 128388, at *3 (citing Estelle v. McGuire, 502 U.S. 62, 67 (1991);

Jones v. Superintendent of Rahway State Prison, 725 F.2d 40, 42-43 (3d Cir.

1984)).  "[A]bsent some constitutional violation, it is clear that, particularly in the

area of state sentencing guidelines, federal courts cannot review a state's alleged

failure to adhere to its own sentencing procedure."  Milton, 2010 U.S. Dist. LEXIS

128388, at *3 (quoting Knight v. Beyer, 1989 U.S. Dist. LEXIS 7088 (E.D. Pa.

1989)).  Additionally, "a federal court will not reevaluate a sentence in a habeas

corpus proceeding unless it exceeds the statutory limits."  Id.  Further, merely

adding the words "due process" and "equal protection" does not create a

cognizable claim where the petitioner is alleging an error of state law.  Charles v.

Harry, 2015 U.S. Dist. LEXIS 100996, at *21-22 (E.D. Pa. 2015), adopted by,

2015 U.S. Dist. LEXIS 100104.

As to Petitioner's claim that his sentence exceeded the maximum sentence

and the upper range of the standard guidelines when he was sentenced to a

minimum of fifty-four (54) months in prison, (Doc. 1, pp. 7, 8), Petitioner fails to

present a federal question and thus, this Court does not have jurisdiction to review

this claim.  As noted above, Petitioner pled guilty to nine (9) separate crimes.

Petitioner was sentenced within the standard range for each count.  Gates, 1255

MDA 2013, at p. 8.  "[A] federal court will not reevaluate a sentence in a habeas

corpus proceeding unless it exceeds the statutory limits."  Milton, 2010 U.S. Dist.

51

LEXIS 128388, at *4 (citing Jones, 725 F.2d at 42-43; Williams v. Duckworth, 738 F.2d 828, 831 (7th Cir. 1984); Bonner v. Henderson, 517 F.2d 135, 136 (5th Cir. 1975); Smith v. Wainwright, 664 F.2d 1194, 1196 (11th Cir. 1981)). Therefore, Petitioner's claims that his sentence exceeded the maximum sentence and the upper range of the standard guidelines when he was sentenced to a minimum of fifty-four (54) months in prison fail to establish that he is entitled to habeas relief because he was sentenced within the statutory limits for each conviction. See Gates, 1255 MDA 2013, at p. 8.

In regards to Petitioner's claim that the sentencing court abused its discretion when it improperly considered deterrence as a factor in imposing its sentence on Petitioner, (Doc. 1, p. 10), he fails to present a federal question. In Dove v. York County, Pa, the district court addressed a petitioner's argument that the sentencing court considered a "claim that the 'sentencing court considered irrelevant factors to sentence defendant to the high end of the standard range of sentencing.'" 2013 U.S. Dist. LEXIS 163575, at *52-53 (M.D. Pa. 2013) (Mannion, J.). The court found that it did not have jurisdiction to review this claim. The court reached this conclusion "because the imposition of [the petitioner's] sentence in Pennsylvania is within the sound discretion of the court, [the petitioner's] claim does not raise any constitutional question and is not

reviewable in a federal habeas proceeding." Dove, 2013 U.S. Dist. LEXIS

163575, at *53 (citing Pringle v. Court of Common Pleas, 744 F.2d 297, 300 (3d

Cir. 1984)).

Here, while Petitioner argues that his right to due process rights was

violated, merely adding the words "due process" and "equal protection" does not

create a cognizable claim where the petitioner is alleging an error of state law.

Charles, 2015 U.S. Dist. LEXIS 100996, at *21-22, adopted by, 2015 U.S. Dist.

LEXIS 100104.  As the court stated in Dove, "[i]ndeed, '[a]bsent some

constitutional violation, it is clear that, particularly in the area of state sentencing

guidelines, federal courts cannot review a state's alleged failure to adhere to its

own sentencing procedure.'"  Dove, 2013 U.S. Dist. LEXIS 163575, at *53

(quoting Knight v. Beyer, 1989 U.S. Dist. LEXIS 7088 (E.D. Pa. 1989) (citations

omitted)) (second alteration in original); see Milton, 2010 U.S. Dist. LEXIS

128388, at *4 ("[A]bsent some constitutional violation, it is clear that, particularly

in the area of state sentencing guidelines, federal courts cannot review a state's

alleged failure to adhere to its own sentencing procedure.  Accordingly, a federal

court will not reevaluate a sentence in a habeas corpus proceeding unless it

exceeds statutory limits.").  Therefore, Petitioner's sentence, being in the sound

discretion of the sentencing court, his claim does not raise a constitutional

question and is not reviewable in a federal habeas proceeding. Dove, 2013 U.S.

Dist. LEXIS 163575, at *53 (citing Pringle v. Court of Common Pleas, 744 F.2d

297, 300 (3d Cir. 1984)). As a result, Petitioner fails to present a federal question

and thus, this Court does not have jurisdiction to review this claim.

Finally, as to Petitioner's claim that the sentencing court abused its

discretion by engaging in sentencing manipulation when it imposed consecutive

sentences, see (Doc. 1, p. 10), that claim also fails to present a federal question.

"Pennsylvania courts have discretion in imposing consecutive sentences." Shields

v. Rozum, 2015 U.S. Dist. LEXIS 121312, at *15-16 (E.D. Pa. 2015) (citing Pa. v.

Graham, 541 Pa. 173 (1995) ("The general rule in Pennsylvania is that in imposing

a sentence the court has discretion to determine whether to make it concurrent

with or consecutive to other sentences then being imposed or other sentences

previously imposed."); Pa. v. Raven, 97 A.3d 1244, 1253 (Pa. Super. Ct. 2014)).

"Because the imposition of petitioner's Pennsylvania state sentence is within the

sound discretion of the court," Petitioner's claim fails to "raise any constitutional

questions and are not reviewable in a federal habeas proceeding." Milton, 2010

U.S. Dist. LEXIS 128388, at *7 (citing Pringle, 744 F.2d at 300; 28 U.S.C. §

2254(a); Estelle, 502 U.S. at 67). Therefore, the Court does not have jurisdiction

to review this claim because it fails to present a federal question.

## III.   CERTIFICATE OF APPEALABILITY

Pursuant to 28 U.S.C. § 2253(c), unless a circuit justice or judge issues a certificate of appealability ("COA"), an appeal may not be taken from a final order in a proceeding under 28 U.S.C. § 2254.  A COA may issue only if the applicant has made a substantial showing of the denial of a constitutional right.  28 U.S.C. § 2253(c)(2).  "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further."  Miller-El v. Cockrell, 537 U.S. 322, 327 (2003) (citing Slack v. McDaniel, 529 U.S. 473, 481 (2000)).  Here, there is no basis for the issuance of a COA.  Accordingly, no COA will issue.

"The denial of a certificate of appealability does not prevent [Petitioner] from appealing the order dismissing his petition so long as he seeks, and obtains, a certificate of appealability from the court of appeals."  Martz v. Mooney, 2016 U.S. Dist. LEXIS 59078, at *33 (M.D. Pa. May 4, 2016) (Munley, J.) (citing FED. R. APP. P. 22(b)(1), (2)).

## IV.   CONCLUSION

Based on the foregoing, Petitioner's petition for habeas corpus, (Doc. 1), will be denied.  A COA will not issue.

A separate Order will be issued.


Date: June 1, 2016                                    /s/ William J. Nealon            
                                                   **United States District Judge**